Good morning, you can be seated. Next case arrives, number 220811. Good morning, gentlemen. Mr. Fagan. Thank you, Judge. Good morning, Judges, Counsel. May it please the Court. Counsel, or Judges, the only issue before the Court this morning is whether the trial court was correct in its decision to grant the defendant's second and third motions for summary judgment, suggesting that there was no duty on the part of the defendant, Eugene Baumgartner, towards the plaintiff's deceit, a 13- and 15-year-old cousin's young men who were involved on June 15th of 2006. Is duty an issue of fact for the trier of fact, or is it a question of law? Thank you, Judge. No, it's a question of law for the Court, and the standard of review is de novo. And, Judge, the real issue, I believe, is whether or not the trial court went through the duty analysis. And as this Court and other courts have suggested, the duty analysis is a rather sophisticated and somewhat ethereal and many times misunderstood analysis. And quite frankly, I confess that until I was reviewing the law to prepare this morning, I'm not sure I quite understood it. I'm not even sure I still understand it. Well, you have to find – first, before we get to the four factors, we have to find a relationship that would – Yes. Do you have a case that – it's a question I had for myself. Do you have any support, any case law that would support the proposition that Eugene, as a landowner, simply as a landowner, has a duty to supervise and or train the minor guests on the use of the vehicle that he doesn't even own?  And that's, I think, part of the problems that at least I encountered and that Judge Jeffrey encountered on the trial court level. We were distracted by some type of ability or some type of reason that we want to put some type of theory to this case. Our theory of this case, Judges, is that it's a pure common law negligence case. And quite frankly, we believe that the duty analysis, as the case of Simkins v. CSX suggests, is dependent upon relationships. But it's how that term is used in different contexts, we think, that is important. Judge, let me ask you this. And I think clearly what happened here was extremely tragic. I mean, I don't think anybody could look at the facts here and not feel that way. But the trial court relied on and the defendant relied on this Tilgener v. Spangler case. Yes. In which this court held that because the Supreme Court had not adopted Section 318 of the restatement, a defendant, quote unquote, has no duty to control the conduct of third parties to whom he permits to use his land or channels. That seems to be the essence of the issue here. So how do you get around that clear rule that the homeowner did not have the duty to control third parties that were using his land and channels, or actually using his channels, as Justice Burkett pointed out, that he didn't even know? Where did the duty arise here under common law or under any theory? What was the duty? Judge, we believe the duty was in the context of the facts under the first mode of the duty analysis, which under both the Marshall v. Burger King case and the Simpkins case, is that the court has to determine the relationship within the context of facts that's presented with. We reject that. I understand that. They're farming and the boys are all using the ATV while the grandfather, Eugene, is out doing his farming chores. Where specifically did the duty arise to supervise the boys on the ATV? These two boys, the decedents, were dropped off by Jacob Kohlmeier's mother at Austin Baumgartner's father's farm, which was owned by Eugene, to quote-unquote hang out. And they did hang out. And they were traveling around on the ATV, and then they went in and they had lunch, and then they came out. And Eugene shows up. Grandpa shows up. And he says to Austin, we're going to go make hay. And quite frankly, as I suggest in my papers, what is Jacob and Jeremy supposed to do? Well, what happens is, according to Austin's testimony in his deposition, is that Austin, that's Eugene's grandson, gets on the ATV, and Jacob and Jeremy get on the hay cart, which Eugene is driving, and they go down to the field. We believe that the course of events that that individual specific act at that point inferred that, number one, Eugene knew they were there, knew they were coming with him, and as the course of events took place, knew that they were helping in what he was doing. He was making hay. He was delivering hay back to the barnyard. And then they would be unloading the hay up into the field. What do they have to do with the ATV, sir? Well, I guess my point is, Judge, the two kids that died weren't the ones that decided to bring the ATV into the picture. It was Eugene's grandson that did. The ATV was used because they had three kids, and I guess all three of them could have ridden on the hay cart, but they didn't. The ATV got taken down to the field. But who brought, did Eugene suggest that they come along and tag along in the ATV? No, not at all, Judge. But my point is, what would they do? He didn't suggest it, but he didn't deny it. They came with him. He knew they were there. He did tell them at one point to stop screwing around. Oh, on several occasions he did, Judge. Absolutely he did. And what took place during the evolution of the quote-unquote making hay was that Eugene was on the hay wagon, Austin, the 13-year-old, was driving the tractor. So the 13- and the 15-year-old cousins were there, and they started driving around on the ATV in the field. And then, according to Eugene's grandson, Austin, as the hay wagon would get higher and higher and higher, Jeremy, the 15-year-old, would get on the wagon to help Eugene stack hay bales up above a certain height because Eugene had had a rather traumatic almost amputation of his right arm about 18 to 24 months before. So not only were Jeremy and Jacob fooling around on the ATV, but they were assisting in this hay-making operation. When the hay cart got full, Austin and his grandpa, Eugene, Eugene would drive the tractor back to the hay, to the farmyard, and then the boys, Austin, Jeremy, Jacob, and another grandson of Eugene's, would help unload the wagon by putting it onto this conveyor belt which went up to the hay. They did this evolution two or three times between the late morning and the early afternoon of that day. And while they were making this hay, on several occasions, according to Eugene's testimony, his deposition, he noticed that the boys were fooling around on the ATV, and he yelled at them to stop doing that. So what we suggest, Judge, is that by taking Austin from these two kids who were at Austin's house to hang out, he was implicitly allowing them to not only come with them, and he certainly testified that he didn't ask Jeremy for help, but Jeremy, according to Eugene's grandson, did help when the hay bales got up to a certain point. Would your position be any different if the boys were adults? Actually, quite frankly, I think it would modify the situation to some extent, but I think one of the unique aspects of this case is that it falls under, it has some analogous elements of some of the special relationships under Mode 2 of the duty analysis, in that had Eugene Baumgartner been employing these kids, then there'd be no, in my opinion, no question whether or not a duty would exist. But he didn't employ them. He didn't, but they were working in a fashion similar to the master-servant relationship. Well, one of them was occasionally helping out. In the stacking, Judge, but when they did get back to the barnyard, both of them helped unload the hay. So let me put it in a different context. So if you're saying that you were getting prepared for a graduation party at your house, and some of your son's friends show up and they start moving around some tables to set up for the party, and then they start riding around on some ATVs, you would be responsible because they moved some tables. I would certainly have the beneficial enjoyment of the fact that they did labor for me. Which is what happened there. Yes, but I would have direct control, as Eugene did, over whether or not these invitees, these guests of my son at the graduation party, could use the ATV, should have used the ATV, or I certainly could stop them. Even though Eugene, did Eugene own the ATV? He did not. Okay. So then why is he supposed to supervise the use of a channel that he doesn't own? Because he was the one that could, not only by law, okay, but he was the only adult, the only person present that could. But then would you agree, if we were to agree with your position, we would be extending the law here? I would suggest that you would be finding a duty and a cause of action under common law negligence that previously did not exist. Right. And under Chilchner it would say should not exist. If you classify this as a premises liability case, yes, I don't. I consider this to be a common law negligence case, and I consider the acts or omissions to be not one specific act or omission in a snapshot in time, but over a series of acts and omissions. In other words, Eugene Baumgartner, when he decided that he was going to allow these kids to come with him, that wasn't the one event. So you're saying a farmer, as we, your analysis is a farmer who allows young people to participate in farming activities by their own choice becomes responsible for their injuries if they're injured at all in any way related to that farming operation. Is that essentially what you're saying? Again, Judge, if more facts are present, if that's just the only facts that are present, no. Well, those aren't the facts here. Well, they are. Mr. Eugene had no control over the ATV. I could see it if he were the owner of the ATV and he had control over the ATV. I would think that you'd have a much stronger argument, but he didn't. He didn't own the ATV. It wasn't his vehicle. No, sir. It was not his vehicle, but it was his land, and they were involved in an operation that was towards his benefit. He was the only person that not only could have, but by law had the authority to. Let me connect this up because I guess it's not immediately clear to me the connection between allowing them voluntarily to assist with the farming operation and then the use of the ATV. So you are saying, if I'm getting this right, that because he allowed them to voluntarily assist with the hay operation, therefore that evolved upon him a duty to control everything else they did there, including the use of the ATV. Is that what you're saying? Yes, especially if he observed them misusing the piece of equipment. That he had no control over and no obligation. But he didn't, Judge. He was the landowner, and he was the owner of the, he owned that property. He was an adult. He could have told those boys no. He could have taken the key. If they ignored him, he could have called the police. Wouldn't it have been any different if the boys were out, and whether Eugene was working or whether he was sitting under a tree smoking a pipe, and the boys were out there with slingshots, and he said, hey, put the horse around those slingshots, and one kid pokes the other kid's eye out. Would your position be any different in that circumstance versus the circumstance that we're in today? I guess my question is the fact that they were doing some, a little bit of farming. Is that the most significant thing here, or is more significant the fact that he was supervising? I think a whole series of things are important. One is that he was the adult, they were the minors. Number two is that there is a statute that allows him, that actually authorizes him to preclude the use of an ATV on his property. The real question is, as does the first mode of the duty analysis, and first of all, I think we have to begin with the premise that every person owes a duty of ordinary care to others to guard against injuries that are reasonably probable and foreseeable. And the first mode of the duty analysis suggests that you go through the four factors of foreseeability, likelihood, Yes, but before you get to that, doesn't the case, I'll make it clear, maybe that's where we're part in company here, is the law requires the court to first consider whether there's a special relationship at all. You don't get to the martial factors until the court finds there's some kind of a special relationship, and you seem to be implying that any time an adult is present and children are gauging in behavior that could be dangerous, the adult automatically has some special relationship to the minor children. Judge, with respect, my reading of the Simpkins case is the opposite of what the appellee suggests, in that I do not believe that the court looks to whether or not there's a special relationship first. That's mode two of the duty analysis. Mode one of the duty analysis is you have to determine whether the acts or omissions of the actor, of the defendant, cause some type of injury to the plaintiff. And if that did occur, then you do look at those four factors. Have you read the Allendorf case? I'm sure I have, Judge, but I don't remember the facts off the hand. Allendorf says a court first looks to the relationship between the parties to see if their relationship gives rise to a duty and then weighs the four factors, only in considering whether the circumstances warrant an exception to the duty. Yes, and quite frankly, Judge, this whole idea of the exception that was mentioned in the Marshall case, my reading again of the Marshall case, and I use those words in my brief as well, probably incorrectly based upon what I now believe is the case. But basically when we say relationship, in the mode one of the duty analysis is the relationship of the sum of those four factors, the foreseeability, the likelihood, the burden, and the consequence. Once that occurs, if you decide that there is no duty under that analysis, then you ask, is there some special relationship? Now, in the Marshall case, what was occurring, as I understand it, is that the plaintiffs were saying that both mode one of the duty analysis and mode two of the duty analysis support our position that there is a duty in this case. And the defendants were saying, no, we're saying that under the special relationship or mode two of the duty analysis, there is a duty, but if you go back and you look at those four factors, foreseeability, likelihood, and the other two, there's an exception to that mode one analysis. And the Marshall opinion said, no, we're not willing to carve out an exception based upon our analysis of those four factors. Let's say, for example, we find that there is a special relationship. What about the burden of placing that duty on farmers? The magnitude of that burden. It happens every day in every state in this country. Kids during the summer invite people to the farm, and young men and young women every day, minors, participate in farming activity. Yes, absolutely. And quite frankly, it depends on the factual context. If they're contributing or if they're working on the farming activity with a chainsaw, and they're 13 years old, and they're fooling around with a chainsaw, then absolutely, I believe. But this isn't a chainsaw. This is an ATV, which is a common vehicle, and Illinois carves out an immunity for landowners who are not doing it for hire, but not for children. Judge. So you're saying it's fact specific. Absolutely, it's fact specific. Mr. Fagan, thank you for your time. You're going to have an opportunity for rebuttal. Thank you. All right. Mr. Potter. Thank you, Your Honor. May it please the court, counsel. My name is Tom Potter. I'm here on behalf of the defendant, Eugene Baumgartner. I think what's happening to some extent is we're confusing the right with the duty. I think it's undisputed that Eugene Baumgartner had the right to throw those kids off his land and say, I don't want you here. That doesn't mean that he had the duty to do it. I think Tilichner says that. I think the landowner in Tilichner had the right to send all those people home, not to have a fireworks display or whatever. Maybe hindsight should have. Certainly, but we can't gauge the situation with the wisdom born of the event. Isn't the fact that these were minors, doesn't that have any significance? It does to some extent, depending on the age. Of course, if they were 13, they were between the magic numbers of 7 and 14. So that would be for the jury to decide whether they were capable of negligence, I believe. Judge Jeffrey, in his opinion, cited the case involving the minor that was hurt by driving an ATV, Morris, I believe. That's on page 6 of Judge Jeffrey's opinion. He said this ATV riding, that the court said ATV riding is an inherently dangerous activity, and trespassers engaging in such activity must be responsible for guarding their own safety when riding on another's property. But we don't have that here. We don't have a trespasser. The ATV statute specifically, in my opinion, in reading the legislative attempt, was put out there for people who were just going to take an ATV or a snowmobile or come flying through your property. And the landowner can't be responsible if you come upon their property on this ATV. That's not what we have here. We have here two minors that were given an ATV that is owned, albeit not by Eugene, but by his son, driving this ATV on the property. So it's a little different than the exception that's carved out in the ATV statute, isn't it? It is, and I think the ATV statute— Does it even apply to us? I don't think it does. Is it talking about highway or roadway? It's a premises case statute defining the rights and obligations of the landowner. Of the landowner with respect to someone who trespasses, basically, with an ATV. Correct. And I don't think we have a premises case at all. Because they weren't heard on the premises, right? Well, not only that. That's one reason. The other reason is I was working on another case that had to do with open and obvious, and I read the McDonald case, which was the commuter train that just came out, and I thought, well, maybe a good way to decide whether it's a premises liability case at all, in addition to what I cited in the brief about whether immunity would kick in if it were a public authority, is to ask a question about it. Is the condition open and obvious? Well, if you have to look around and say what condition, then it's probably not a premises case. So ask yourselves in this case, is the condition of the premises that caused the injury open and obvious? In some cases it would be, in some cases it wouldn't be. But if you have to say what condition. Isn't the condition of putting two 15-year-olds on an ATV open and obvious to somebody who's in a, quote-unquote, maybe he's not in a supervisory position, but he's the only adult out there, with boys that are horsing around on an ATV, who he says to them on several occasions, knock it off, quit horsing around. At some point, isn't someone responsible for the inmates, if you will? I mean, who's responsible for the minors? When you say open and obvious, I think we should confine it to premises liability cases. Well, I understand what you're speaking about. So your question was more to is it wise for an adult to allow that to go on just because. And I think that's the nub of the problem with this case. Well, it's a question of the law. I think you hit the nail on the head. Morally, should he have said something, as you say, should have or could have, if that's different than a duty. Eugene really didn't have anything to do whatsoever with the ATVs, did he? Correct. He didn't put them on the ATVs, he didn't ask them to ride the ATVs, he didn't own the ATVs, he didn't suggest they ever get on them correctly. Correct. Did he have anything to do with the ATVs? No. Did he allow them to ride the ATVs? Yes, he did. Did he preclude them from riding the ATVs, like a bunch of 15-year-old boys? No, he did not. But that, again, is the right versus the duty. I think negligent entrustment is pretty well covered by that Smith case, the Cosrow. It fits our situation pretty well, where it's the father and the son, the son entrusts a vehicle to the drunken houseguest, and the court held that the father had no duty, and that's where we are. It's just an ATV instead of an automobile. But that was adults, and you're talking about minors. Well, the son who... They were adults. Yes, the drunken houseguest was an adult, yes. And I can see, for instance, if you've got three-year-olds who can't take care of themselves, then you're the only adult that you have more of a duty. Three-year-olds, 15-year-old boys, what's the difference? You want to get into bed with me? When you give them a toy like that, what's the difference? Well, still that doesn't convert a right to a duty. Do you believe that if the boys would have been injured on the wagon, helping out or just sitting on the wagon, riding around with their friends as grandpas bailing, hey, do you think there would be any difference with respect to duty as opposed to the position we're in right now? Depending on the actual facts, yes, because it would be a much easier opportunity to show that the land... Well, not as a landowner, but the person in charge of the bailing operation... Controls the bailing operation. Would be Eugene. He did or did something that he should or shouldn't have done that would have been a much easier... At least we have a framework of where to start the analysis. Here, I don't think we do. I think I've said it all that I have. Any questions? Any other questions? No. Thank you. Okay. Thank you, Your Honor. Mr. Fagan, you have time for rebuttal. Thank you, Judge. If I could address the Tilson situation, in that case you had an individual landowner who invited guests to a party, and one of the guests that was invited shot off some fireworks and harmed another guest. And the question is whether or not the landowner had some type of duty to protect the person, the individual victim who got hurt. What we're suggesting in this case, Judge, is that even though Kurt Baumgartner owned the ATV, and even though Jeremy was driving and Jacob was a passenger ultimately when the accident took place, we're suggesting there's a direct responsibility here, not some type of responsibility for any type of third party, not some type of duty to control any third party. This was a direct responsibility and duty that we're suggesting on the part of Eugene Baumgartner towards these two individual deceased. Based upon what? Based upon, again, the relationship between the individuals. Based upon the fact that they were there visiting his grandson. Based upon the fact that he took his grandson from the farm. Based upon the fact that they were not anywhere near their homes. They were located two to three miles, maybe even four miles away from where they lived. They were there for the day. What were they to do? Based upon the fact that he observed them misusing this ATV and counseled them on it several times. I think if you go back and you look at the foreseeability, the likelihood, the burden, and the consequence, again, it developed over the actions. It was not one act. It was a series of actions and omissions on the part of Eugene Baumgartner and certainly on the part of the two young men. But what we can say is, but for his decision to allow them to be there, to allow them to be using this ATV, to, once they were misusing it, not forcing them to stop, they wouldn't have found themselves on Pearl City Road at the time of the accident. This was a series of events, Judge. And what happened in this case was that the boys often knew what this... Yes, and we believe that's what the boys did as well, Judge, because there was in the deposition some pictorial evidence that suggested that there was quite a few tracks on the north side of Pearl City Road, which was the side where the field was on. But because of the specific facts of the case, what you had to do to exit the field and get into the barnyard was you had to actually go out on the road just for a very short period of time to get down into the ditch. We think, and this is obviously speculation, but it's based upon the evidence that was collected at the scene, that the boys, when they exited the field, they went across the road completely and waited for Eugene and Austin to exit the field with the hay wagon and the tractor. And when the hay wagon and the tractor made a right turn and went west on Pearl City Road towards the barnyard, they crossed back across Pearl City Road, went down into the ditch. But then because this was the third evolution, at least the third evolution of this hay-making operation, speculation that I have is that the boys, in order to get into the barnyard to get prepared to go up into the hay mower to receive these bales that they were going to be unloading, they went out of the ditch behind the hay wagon to get in front of the wagon to go into the barnyard. I think that's the point that I was raising, is that the prior activity had not involved the use of the roadway, but they decided to use the roadway. Even if we were to find some special relationship, how could Eugene have anticipated that they would go out on the roadway? Well, and again, Judge, it's our position that you don't have to find one of the four special relationships, that you can make this decision regarding duty under the Mode 1 analysis as suggested in the CSX case. But how he had any foreseeability that they would be fooling around on the ATV would be him having to talk to them on several occasions. Well, apparently they complied because they continued to operate it, and his cautions must have worked at some point. Well, again, that I think would be a factual question for the jury to answer. In other words, yes, we believe that during the first couple of evolutions, they did follow the wagon the entire way. How could he have known that they wouldn't? I don't think he could have, but I don't think that enters into whether or not he had a duty to control the operation of the unit. Let me just ask one question to clarify this last point. Are you saying any time somebody voluntarily makes a comment to somebody else about their behavior that evolves into a duty, if you're on a bus and you tell some kids to knock it off or if you're fooling around in the back of the bus and then some other patron on the bus gets injured, the person who suggests to them not to do something has a duty to an unknown third party? Not at all, Judge. If you're the bus driver. Yeah, and you're not the bus driver. No, not at all. So the mere fact that Eugene said to them, hey, quit fooling around with these ATVs, you guys, you're not saying that in and of itself created a duty, are you? No, sir, not in any way, shape, or form. I just wanted to clarify that. No. Gentlemen, thank you so much for coming in today. Thank you for your arguments. Thank you, Judge. We enjoyed seeing you. A decision will be rendered in due course, and court will be in recess for a few minutes before we start our next case. Thanks, gentlemen. Thank you.